# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RAYMOND D. CHESTER,

               Plaintiff,

     v.

AUDREY KING, et al.,

               Defendants.

1:16-cv-01257-DAD-GSA-PC

**FINDINGS AND RECOMMENDATIONS REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 36, 43.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

Raymond D. Chester ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is detained at Coalinga State Hospital in Coalinga, California, as a Sexually Violent Predator pursuant to California's Sexually Predator Act, Cal.Welf. & Inst.Code § 6604.  Plaintiff filed the Complaint commencing this action on August 25, 2016.  (ECF No. 1.)  This case now proceeds with Plaintiff's First Amended Complaint filed on August 31, 2017, against defendants Audrey King

(Executive Director), Jagsir Sandhu, M.D. (Chief Medical Officer), Bradley Powers, M.D. (Unit Physician), and Robert Withrow, M.D. (Medical Director of Coalinga State Hospital) for failing to provide adequate medical care to Plaintiff in violation of the Fourteenth Amendment.  (ECF No. 10.)

Currently before the court are defendant Powers' and Plaintiff's cross-motions for summary judgment.  On August 19, 2019, defendant Bradley Powers, M.D. ("Defendant") filed a motion for summary judgment.[1]  (ECF No. 36.)  On September 9, 2019, Plaintiff filed an opposition to Defendant's motion and a cross-motion for summary judgment.  (ECF No. 43.)  On September 30, 2019, Defendant filed an opposition to Plaintiff's cross-motion. (ECF No. 47.)  The motion and cross-motion are deemed submitted. Local Rule 230(*l*).

For the reasons set forth below, the court recommends that defendant Powers' motion for summary judgment be granted and Plaintiff's cross-motion for summary judgment be denied.

## II.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] On August 19, 2019, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 38.)

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." A.C.L.U. of Nev. v. City of Las Vegas, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); see also Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

Because this court must liberally construe pro se pleadings, the arguments and evidence submitted in support of Plaintiff's cross-motion for summary judgment will be considered in tandem with, and as part of, Plaintiff's opposition to Defendant's motion for summary judgment.

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.   SUMMARY OF ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[2]

Plaintiff is currently detained at Coalinga State Hospital in Coalinga, California, in the custody of the California Department of State Hospitals, where the events at issue in the First Amended Complaint allegedly occurred.   Plaintiff brings claims against defendants Audrey King; Jagsir Sandhu, M.D.; Robert Withrow, M.D.; and Bradley Powers, M.D., for failing to provide adequate medical care to Plaintiff in violation of the Fourteenth Amendment.  Plaintiff's allegations follow, in their entirety:

Plaintiff has Hepatitis C.   Hepatitis C is a fatal disease of the liver. Hepatitis C will destroy plaintiff's liver and kill plaintiff if it is not treated. However, there is a cure for Hepatitis C. This cure is a drug called Harvoni. Harvoni is the only available treatment that will cure plaintiff's Hepatitis C disease.

At least three times since July 31, 2015, plaintiff has requested Hepatitis C treatment, but no treatment has commenced over the past year. Plaintiff has been repeatedly told that "approval is needed" to treat plaintiff's Hepatitis C. First Amended Complaint, ECF No. 10 at 4.  As of December 29, 2015, "a referral for an infectious disease consultant [was] made to address treatment of [plaintiff's] Hepatitis C" by plaintiff's former primary care physician.  Id.  Nothing else has happened to actually provide plaintiff with Hepatitis C treatment. In fact, since his ascension into the position of plaintiff's Primary Care Physician in October 2016, defendant Bradley Powers has [refused] to pursue the critical medical treatment plaintiff needs with Harvoni to stay alive and regain his health.

Please see attached Administrative Grievances, wherein plaintiff complained about not receiving treatment for his Hepatitis C.  It must be noted

---

[2] Plaintiff's First Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

that plaintiff is a patient in a state hospital with significant brain damage due to a previous motorcycle accident; it must be further noted that the "advocate specialists" handling plaintiff's administrative complaints did nothing to forward plaintiff's grievances to higher levels, preferring not to advocate for plaintiff, but to tell plaintiff to do it himself.  Id.  However, plaintiff is informed and believes and thereon alleges that due to his verbal inquiries, defendant Powers personally interfered with the former referral for Harvoni by withdrawing it; the matter was personally denied by defendant Dr. Sandhu (and also by Dr. Neubarth and Dr. Withrow).  Upon personal inquiry to defendant King through a third party (and also by Dr. Price), plaintiff has learned two things: (1) he will be consistently denied Hepatitis C treatment with Harvoni, the only available treatment to cure Hepatitis C; and (2) At least four Hepatitis C patients at plaintiff's state hospital have requested Harvoni, and all four patients have been denied on the ground that they were not "sick enough" for Harvoni.  In all four cases, plaintiff is informed and believes and thereon alleges that the four patients denied treatment with Harvoni died of cirrhosis of the liver, and therefore liver failure.  In these cases, Harvoni is ineffective because the defendants wait too long to initiate treatment.

Plaintiff requests preliminary injunctive relief and monetary damages.

## IV.   FOURTEENTH AMENDMENT MEDICAL CLAIM

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause.  Youngberg v. Romeo, 457 U.S. 307, 315, 102 S.Ct. 2452 (1982).  A determination whether Plaintiff's rights were violated requires "balancing of his liberty interests against the relevant state interests."  Id. at 321.  The civil nature of Plaintiff's confinement provides an important gloss on the meaning of "punitive;" Plaintiff must be afforded "more considerate treatment" than even pretrial detainees, who are being criminally detained prior to trial.  Unknown Parties v. Nielsen, No. CV-15-00250-TUC-DCB, 2020 WL 813774, at *4 (D. Ariz. Feb. 19, 2020) (quoting Cf. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976).  However, the Constitution requires only that courts ensure that professional

judgment was exercised. <u>Youngberg</u>, 457 U.S. at 315. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." <u>Id.</u> at 321. A "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." <u>Id.</u> at 322-23.

Although claims by civil detainees properly fall under the Fourteenth Amendment, the Eighth Amendment deliberate indifference standard may still be used in such cases *to establish a floor for claims by civil detainees*. <u>Irvin v. Baca</u>, No. CV 03-2565-AHS (CW), 2011 WL 838915, at *8 (C.D. Cal. Jan. 18, 2011), <u>report and recommendation adopted,</u> No. CV 03-2565-AHS CW, 2011 WL 835834 (C.D. Cal. Feb. 28, 2011) (emphasis added). That is, a civil detainee who can show a violation under an Eighth Amendment standard can also satisfy a Fourteenth Amendment standard. <u>Id.</u> "[T]he Eighth Amendment still provides a floor for the level of protection that SVPs must receive . . . and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied." <u>Hubbs v. County of San Bernardino</u>, 538 F.Supp.2d 1254, 1266 (C.D.Cal. 2008).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006); <u>see also</u> <u>Estelle</u>, 429 U.S. at 106. A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain. <u>Jett</u>, 439 F.3d at 1096. An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which

prison physicians provide medical care." <u>Jett</u>, 439 F.3d at 1096.  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

Under both the "professional judgment" and the "deliberate indifference" standards, mere negligence or medical malpractice does not violate the Constitution.  <u>See</u> <u>Estelle</u>, 429 U.S. at 106; <u>Patten v. Nichols</u>, 274 F.3d 829, 842–43 (4th Cir. 2001) (applying <u>Youngberg</u> "professional judgment" standard to a denial of medical care claim by a civilly committed psychiatric patient and holding that more than negligence is required).  Also, a plaintiff's general disagreement with the treatment he received does not violate the Constitution. <u>Id.</u>; <u>Jackson v. McIntosh</u>, 90 F.3d 330, 331 (9th Cir. 1996); <u>Hutchinson v. United States</u>, 838 F.2d 390, 394 (9th Cir. 1988).  In addition, evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is also insufficient, by itself, to establish deliberate indifference.  <u>Jackson</u>, 90 F.3d at 332. Rather, the plaintiff must show that defendants were aware of the risk of harm and that their response to the risk was medically unacceptable under the circumstances.  <u>Id.</u>

///

///

///

///

///

///

///

///

///

///

///

7

# V.     DEFENDANT'S UNDISPUTED FACTS (UMF)[3]

Defendant Powers submitted the following statement of undisputed material facts in support of his motion for summary judgment.  (ECF No. 36-2.)

| Moving Party's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 1.  Plaintiff's operative complaint is his First Amended Complaint. | **Plaintiff's First Amended Complaint ("Plaintiff's FAC"), ECF No. 10.** |
| 2.  Plaintiff asserts a sole cause of action for violation of Plaintiff's Fourteenth Amendment rights pursuant to 42 U.S.C. §1983 against Defendants Audrey King, Jagsir Sandhu, Coalinga State Hospital, and Moving Defendant Bradley Powers. | **Plaintiff's FAC, ECF No. 10.** |
| 3.  Plaintiff alleges Defendants failed to properly treat his Hepatitis C by not prescribing Harvoni. | **Plaintiff's FAC, ECF No. 10, pgs. 3-4.** |
| 4.  Plaintiff alleges that at least three times since July 31, 2015, Plaintiff requested Hepatitis C treatment but no treatment commenced over the last year. | **Plaintiff's FAC, ECF No. 10, pg. 4.** |

---

[3]  Plaintiff failed to properly address Defendant's statement of undisputed facts.  Local Rule 260(b).  Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion.  Id; Fed. R. Civ. P. 56(e)(2).  Plaintiff did submit his own statement of undisputed facts.  (ECF No. 44.)  In light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

| | |
|---|---|
| 5.  Plaintiff contends Dr. Powers personally interfered with a former referral for Harvoni by his previous primary care physician by withdrawing it. | **Plaintiff's FAC, ECF No. 10, pg. 4**. |
| 6.  Plaintiff is currently, and at all relevant times in this litigation, has been a resident of Department State Hospitals-Coalinga ("DSH-Coalinga"). | **Plaintiff's FAC, ECF No. 10.** |
| 7.  Harvoni is a relatively new medication that was approved by the FDA in or around 2014 to treat Hepatitis C. | **Declaration of Bradley C. Powers, M.D. ("Powers Decl.") at ¶ 7.** |
| 8.  The Harvoni treatment consists of a daily pill taken for 8-24 weeks, depending on the patient's HCV genotype, amount of liver damage, and prior treatment history. | **Powers Decl. at ¶ 7.** |
| 9.  Harvoni requires patients to be diligent in taking the daily pill continuously. | **Powers Decl. at ¶ 7.** |
| 10.  Missing a dose can result in treatment being ineffective. | **Powers Decl. at ¶ 7.** |
| 11.  One potential side effect of Harvoni is a reactivation of a dormant Hepatitis B infection, which may cause serious liver problems, including liver failure and death. | **Powers Decl. at ¶ 7.** |

| | |
|---|---|
| 12.  The cost of Harvoni medication is approximately $ 90,000. | **Powers Decl. at ¶ 7.** |
| 13.  Pursuant to the California Department of Mental Health Special Order regarding Hepatitis C Screening, Diagnosis and Management Guidelines ("CDMH Special Order") for Hepatitis C patients being treated in a Department of Mental Health facility, Hepatitis C treatment is recommended for patients with chronic Hepatitis C who are at the greatest risk for progressing to cirrhosis. | **Powers Decl. at ¶ 8; Ex. B to Declaration of Anoush Holaday ("Holaday Decl.").** |
| 14.  Prior to initiating treatment, an assessment is needed that considers the patient's likelihood of treatment compliance and personality traits that impair frustration tolerance and reduce the likelihood of treatment compliance. | **Powers Decl. at ¶ 8; Ex. B to Declaration of Anoush Holaday ("Holaday Decl.").** |
| 15. It is also footnoted that additional factors to consider include cognitive capacity and ability to understand and follow treatment directions, as well as Hepatitis B status. | **Powers Decl. at ¶ 8; Ex. B to Declaration of Anoush Holaday ("Holaday Decl.").** |

| | |
|---|---|
| 16. For those patients who do not undergo treatment for Hepatitis C, management of medical care includes monitoring ALT levels and CBC monthly and re-evaluation of patient if ALT levels increase above normal limits, monitoring for other signs/symptoms of liver disease every 4-6 months, and screening for hepatocellular carcinoma in patients with indicators of advanced liver disease. | **Powers Decl. at ¶ 8; Ex. B to Declaration of Anoush Holaday ("Holaday Decl.").** |
| 17. Plaintiff was diagnosed with Hepatitis C in 1999 at Atascadero State Hospital. | **Plaintiff Raymond Chester's Deposition ("Chester Depo.") pg. 13:21-14:2; Ex. C to Holaday Decl**. |
| 18. Plaintiff did not seek any treatment for his Hepatitis C at this time. | **Chester Depo. pg. 33: 18-21; Ex. C to Holaday Decl.** |
| 19. Plaintiff was admitted to Coalinga State Hospital on 1/14/2009. | **Powers Decl. at ¶ 9; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000002** |
| 20. From 2011- 2015, Plaintiff was episodically showing signs of liver inflammation, a common course for Hepatitis C infection, but did not show signs of significant irreversible injury to the liver. | **Powers Decl. at ¶ 10; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000007, POWERS000019, POWERS000042, POWERS000056-57, POWERS000071, POWERS000084, POWERS000091-98, POWERS000111-112, POWERS000236-242** |

| | |
|---|---|
| 21.  Plaintiff had liver enzyme elevations potentially related to ingestion of valproic acid, a drug that was prescribed by the psychiatry team to help with mood stabilization secondary to the patient's traumatic brain injury. | **Powers Decl. at ¶ 10; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000187, POWERS000236-242** |
| 22.  Since Plaintiff was without significant liver injury related to his Hepatitis C infection, Plaintiff's course of treatment related to Hepatitis C consisted of monitoring Plaintiff periodically through lab tests and physical check ups, and observing for any worsening signs of Hepatitis C. | **Powers Decl. at ¶ 11; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000007, POWERS000019, POWERS000042, POWERS000056-57, POWERS000071, POWERS000084, POWERS000091-98** |
| 23.  On October 13, 2014, Plaintiff underwent an abdominal ultrasound which showed no liver mass, no bile duct dilatation and no evidence of enlargement of the liver. | **Powers Decl. at ¶ 12; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000111** |
| 24.  On October 9, 2015, Plaintiff underwent a CT of his abdomen/pelvis with contrast using a liver protocol, which revealed no liver mass, no ascites, no portal vein thrombosis, nor fibrosis, and no changes suggesting the development of liver cirrhosis. | **Powers Decl. at ¶ 13; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000112** |

| | |
|---|---|
| 25.  Despite being diagnosed since 1999, Plaintiff did not seek any treatment for his Hepatitis C until on or around fall 2015 from his former primary care physician, Dr. Arun Hatwalker. | **Chester Depo. pg. 37: 7-11 and 19-23; Ex. C to Holaday Decl.** |
| 26.  Dr. Hatwalker considered the Harvoni treatment for Plaintiff's Hepatitis C; however, he believed Plaintiff's Hepatitis B condition could reactivate because of the Harvoni treatment protocol. | **Powers Decl. at ¶ 14; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000113** |
| 27.  On October 15, 2015, he noted to follow up next week to go over possible treatment for Hepatitis C. | **Powers Decl. at ¶ 14; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000113** |
| 28.  On October 30, 2015, Dr. Hatwalker wrote an order for Plaintiff to be referred to an infectious disease specialist for further evaluation and the possible treatment of his Hepatitis C in the face of concomitant Hepatitis B infection. | **Powers Decl. at ¶ 15; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000114** |
| 29.  There is no record of the infectious disease consultation form in the patient's file. | **Powers Decl. at ¶ 15.** |
| 30.  Dr. Hatwalker rescinded his contract to work at Coalinga State Hospital on that same day, for reasons unknown. | **Powers Decl. at ¶ 15.** |

| | |
|---|---|
| 31.  None of Plaintiff's prior primary care physicians made a determination or referral that Harvoni was an appropriate course of treatment for Plaintiff's Hepatitis C as of the end of 2015. | **Powers Decl. at ¶ 16.** |
| 32.  Dr. Powers began treating Plaintiff on November 10, 2015. | **Powers Decl. at ¶ 17.** |
| 33.  Plaintiff did not approach Dr. Powers, as his new primary care physician, for treatment of his Hepatitis C until July of 2016. | **Powers Decl. at ¶ 17; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 34.  In the weeks following, as Dr. Powers took over the care of the patient, it was noted that Plaintiff had frequent emotional outbursts with mood lability, and refusals of medical diagnosis and treatment. | **Powers Decl. at ¶ 18; Ex. D to Holaday Decl. Bates-Stamped pg. POWERS000101-102, POWERS000194, POWERS000198, POWERS000244-246** |
| 35.  In December of 2015, Plaintiff refused treatment for his hypertension and claimed that he wanted to die soon because he didn't want to live at Coalinga State Hospital. | **Powers Decl. at ¶ 18; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000244** |
| 36.  In February 2016, he demanded that all his medications be discontinued, and he refused to take his medications | **Powers Decl. at ¶ 18; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000245** |
| 37.  In May 2016 he again refused to accept treatment for an acute medical condition, but then changed his mind a few days later. | **Powers Decl. at ¶ 18; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000246** |

| | |
|---|---|
| 38.  It was also noted that Plaintiff has a history of refusing multiple recommended medications that were prescribed for his various conditions. | **Powers Decl. at ¶ 18; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000187, POWERS000244-260** |
| 39.  On June 14, 2016, Plaintiff reported to his Treatment Team, typically the psychologist, psychiatrist, social worker and behavioral therapist, that he was interested in beginning Hepatitis C treatment. | **Powers Decl. at ¶ 19; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000108** |
| 40.  He was informed that his treating RN would follow up with his request. | **Powers Decl. at ¶ 19; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000115** |
| 41.  On June 29, 2016, his treating nurse, Gerard Tiongson, evaluated his Hepatitis C and noted that he was stable and asymptomatic. | **Powers Decl. at ¶ 20; Ex. D to Holaday Decl.,  Bates-Stamped pg. POWERS000116-121** |
| 42.  He was then referred to his primary care physician. | **Powers Decl. at ¶ 20.** |
| 43.  On July 28, 2016, Plaintiff formally requested treatment for his Hepatitis C from Dr. Powers. | **Powers Decl. at ¶ 21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 44.  Dr. Powers informed him that preliminary testing was required prior to beginning any treatment, which upset Plaintiff. | **Powers Decl. at ¶ 21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |

| | |
|---|---|
| 45.  Plaintiff initially refused to do testing. | **Powers Decl. at ¶ 21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 46.  Dr. Powers ordered the tests in case Plaintiff changed his mind. | **Powers Decl. at ¶ 21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 47.  On August 10, 2016, Plaintiff's blood tests showed normal CBC, normal liver function testing, except mild elevation of total bilirubin, and low viral load of hepatitis C infection.  Thyroid testing was also within normal limits at that time. | **Powers Decl. at ¶ 22; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000123-127** |
| 48. On August 23, 2016, Dr. Powers approached Plaintiff regarding treating him for Hepatitis. | **Powers Decl. at ¶ 23; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 49. Dr. Powers informed him that he needed to be vaccinated against the Hepatitis B because he had no evidence of immunity, but did have evidence of prior Hepatitis B infection. | **Powers Decl. at ¶ 23; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |
| 50.  Dr. Powers also noted that in order to treat Plaintiff's Hepatitis C and to avoid any further liver damage or complications due to interactions between the newer Hepatitis C treatments—such as Harvoni--and reactivation of a dormant Hepatitis B infection, a Hepatitis B vaccination was medically necessary. | **Powers Decl. at ¶ 23; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122** |

| | |
|---|---|
| 51.  On August 24, 2016, Dr. Powers ordered the Hepatitis B vaccination for Plaintiff. | **Powers Decl. at ¶ 24; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000128, POWERS000141** |
| 52.  On October 20, 2016, Dr. Powers ordered a fiber scan of Plaintiff's liver to further evaluate Plaintiff's status of liver damage. | **Powers Decl. at ¶ 25; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000129** |
| 53.  On October 26, 2016 Plaintiff's fibroscan results showed low inflammation of the liver.  At that time, FIB4 and APRI calculations also suggested low inflammation. | **Powers Decl. at ¶ 25; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000130-131** |
| 54.  From March 2016- October 2016, routine check ups with his treating RN also revealed Plaintiff did not demonstrate any signs or symptoms of liver impairment. | **Powers Decl. at ¶ 26; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000132-140** |
| 55.  Pursuant to the CDMH Special Order, Dr. Powers performed an assessment to determine whether Harvoni was an appropriate course of treatment for Plaintiff's Hepatitis C. | **Powers Decl. at ¶ 27.** |

| | |
|---|---|
| 56.  Based on review of Plaintiff's medical record, Plaintiff had a history of a severe traumatic brain injury, which causes significant episodes of irrationality, irritability, lack of impulse control, low frustration tolerance, poor decision making, and profound noncompliance with recommended medical treatment. | **Powers Decl. at ¶ 28; Ex. D to Holaday Decl. Bates-Stamped pg. POWERS000101-102, POWERS000169-170, POWERS000173, POWERS000177-179, POWERS000184-187, POWERS000191, POWERS000193-198, POWERS000244-260** |
| 57.  Given these psychological issues, Dr. Powers determined that Plaintiff's mental health issues could sabotage his ability to complete a course of treatment with Harvoni. | **Powers Decl. at ¶ 28.** |
| 58.  Upon reviewing Plaintiff's multiple diagnostic tests, which were within normal range and did not show any impaired liver function, and considering Plaintiff's mental health issues, Dr. Powers determined that Plaintiff was not a good candidate for Harvoni at that time | **Powers Decl. at ¶ 29.** |
| 59.  Based on his professional judgment, Dr. Powers found that Plaintiff's Hepatitis C had not progressed to a level that necessitated treatment with Harvoni. | **Powers Decl. at ¶ 29.** |

| | |
|---|---|
| 60.  Dr. Powers' plan at that time was to continue to monitor Plaintiff's laboratory parameters, and to slowly build rapport with him so that he could help Plaintiff understand the absolute importance of completing the Harvoni treatment from the first day though the last due to Plaintiff's history of lack of cooperation with taking prescribed medication and concern that Plaintiff would not complete treatment even if he was a good candidate. | **Powers Decl. at ¶ 29.** |
| 61.  Although it is true that chronic Hepatitis C infection frequently leads to liver cirrhosis and sometimes liver cancer over a period of 10 to 30 years, at this juncture, there was no evidence of any of these more serious conditions nor was there evidence that the Plaintiff had significant inflammation in his liver. | **Powers Decl. at ¶ 29** |
| 62.  Dr. Powers' recommended course of treatment was to continue to monitor Plaintiff's Hepatitis C condition through routine lab tests, physical check ups and observe for any worsening signs of his conditions. | **Powers Decl. at ¶ 30.** |
| 63.  On February 1, 2017, Plaintiff received his third dose of the Hepatitis B vaccine. | **Powers Decl. at ¶ 31, Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000161** |

| | |
|---|---|
| 64.  Plaintiff remained asymptomatic for clinical signs of hepatic dysfunction from January 2017 through October 2017. | **Powers Decl. at ¶ 32; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000142-160** |
| 65.  On July 13, 2017, Dr. Powers ordered further blood tests to assess Plaintiff's Hepatitis B and C conditions; however, Plaintiff did not show up for his tests. | **Powers Decl. at ¶ 33; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000162-163** |
| 66.  On or around September 2017, Dr. Powers was moved to a different unit and no longer was Plaintiff's primary care physician. | **Powers Decl. at ¶ 34.** |
| 67.  On November 9, 2017, Plaintiff underwent a fibrosis calculator which showed low inflammation of the liver. | **Powers Decl. at ¶ 35; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000164-165** |
| 68.  On December 13, 2017, another physician, Anthony Miller, M.D., prescribed Plaintiff Harvoni. | **Powers Decl. at ¶ 36; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000166** |
| 69.  Plaintiff did not take two doses of Harvoni, on January 16, 2018 and January 21, 2018. | **Powers Decl. at ¶ 37; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000261-262** |
| 70.  Plaintiff does not currently suffer from Hepatitis C and is cured of the condition. | **Chester's Depo pg.  22:9-21; 41:4-11; Ex. C to Holaday Decl.**<br><br>**Powers Decl. at ¶ 38; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000199-234** |

| | |
|---|---|
| 71.  Plaintiff did not suffer any injury caused by a delay in receiving Harvoni. | **Chester's Depo. pg. 43:14-16; 49:6-9; Ex. C to Holaday Decl.**<br><br>**Powers Decl. at ¶ 39.** |
| 72.  Plaintiff did not seek or receive any medical treatment for any injury caused by a delay in receiving Harvoni. | **Chester's Depo. pg. 43:23-44:3; Ex. C to Holaday Decl.** |
| 73.  As of November 2018, the results of Plaintiff's laboratory testing show no evidence of infection due to Hepatitis C and normal liver function testing.  Platelet count, another marker of chronic liver injury, also remains in the normal range. | **Powers Decl. at ¶ 39; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000199-234** |
| 74.  No act or omission by Dr. Powers caused or contributed to Plaintiff's alleged injuries. | **Powers Decl. at ¶ 39.** |
| 75.  Dr. Powers course of treatment was appropriate in consideration of Plaintiff's medical condition. | **Powers Decl. at ¶ 42.** |
| 76.  Dr. Powers complied with the standard of care for family physicians and was not deliberately indifferent to Plaintiff's medical needs. | **Powers Decl. at ¶ 42.** |

| | |
|---|---|
| 77.  No physicians have informed Plaintiff that the delay in receiving Harvoni caused him any damage or medical complications. | **Chester's Depo. pg. 43:14-16; Ex. C to Holaday Decl.** |

## VI.    DEFENDANT POWERS' POSITION[4]

Defendant's evidence includes Plaintiff's First Amended Complaint (ECF No. 36-4), defendant Bradley Powers' declaration (ECF No. 36-8), California Department of Mental Health Special Order dated January 1, 2003 (ECF No. 36-5), Plaintiff's deposition testimony (ECF No. 36-6), and Plaintiff's medical records (ECF No. 56).  Defendant Powers argues that Plaintiff cannot establish that Defendant failed to act with professional judgment when treating Plaintiff, or that Plaintiff was injured by Dr. Powers' conduct as required to meet the burden under the Fourteenth Amendment.

### A.    <u>Dr. Powers was not Deliberately Indifferent to Plaintiff's Medical Needs</u>

Defendant first argues that Plaintiff has not established that he was denied constitutionally adequate medical care.  Dr. Powers declares that he became Plaintiff's primary treating physician on November 10, 2015, (Defendant's Undisputed Material Facts (UMF) 32, Powers Decl., ECF No. 36-8 at 4 ¶ 17), but that Plaintiff did not approach him, as his new primary care physician, for treatment of his Hepatitis C until July of 2016, (UMF 33, Powers Decl. at 4 ¶ 17; Exh. D to Holaday Decl., ECF No. 56-1 at 122).

On July 28, 2016, Plaintiff formally requested treatment for his Hepatitis C from Dr. Powers, but Plaintiff initially refused to do any preliminary testing for an evaluation of Hepatitis C treatment.  (UMF 43-45, Powers Decl. at 5 ¶ 21, Exh. D to Holaday Decl., ECF No. 56-1 at 122.)  Once Plaintiff cooperated, Dr. Powers performed a medical evaluation of Plaintiff's fiber scan, blood test results, and RN progress notes, which all revealed normal liver functioning, with no signs or symptoms of liver impairment that would indicate that treatment was medically

---

[4] The court's references to page numbers in Defendant's Exhibit D to Holaday Decl. reflect the page numbers appearing after "POWERS000," which are Bates-stamped at the bottom of each page of the exhibit. (See ECF No. 56-1.)  Otherwise, the page numbers cited herein are those assigned by the court's CM/ECF system.

necessary. (UMF Nos. 47, 52-54, Powers Decl. at ¶¶ 22, 25-26; Ex. D to Holaday Decl. at 123-127, 129, 130-140.)

In addition, based on review of Plaintiff's medical record, Plaintiff has a history of a severe traumatic brain injury, which causes significant episodes of irrationality, irritability, lack of impulse control, low frustration tolerance, poor decision making, and profound noncompliance with recommended medical treatment.  (UMF No. 56, Powers Decl. at ¶ 28; Ex. D to Holaday Decl. at 101-102, 169-170, 173, 77-179, 184-187, 191, 93-198, 244-260.)  It was also noted that Plaintiff has a history of refusing multiple recommended medications that were prescribed for his various conditions.  (UMF Nos. 34-38, Powers Decl. at ¶ 18; Ex. D to Holaday Decl. at 101-102, 187, 194, 198, 244-260.)  Given these psychological issues, Dr. Powers determined that Plaintiff's mental health issues could sabotage his ability to complete a course of treatment with Harvoni.  (UMF No. 57, Powers Decl. at ¶ 28.)  In fact, as Dr. Powers predicted, Plaintiff was non-compliant during the course of his Harvoni treatment and did not take two doses of the prescribed medication, on January 16, 2018 and January 21, 2018, thereby jeopardizing the efficacy of his treatment.  (UMF No. 69, Powers Decl. at ¶ 37; Ex. D to Holaday Decl. at 261-262.)

Upon reviewing Plaintiff's multiple diagnostic tests, which were within normal range and did not show any impaired liver function, and considering Plaintiff's mental health issues, Dr. Powers determined that Plaintiff was not a good candidate for Harvoni at that time.  (UMF No. 58, Powers Decl. at ¶ 29.)  Based on his professional judgment, Plaintiff's Hepatitis C had not progressed to a level that necessitated treatment with Harvoni.  (UMF Nos. 58-59, Powers Decl. at ¶ 29.)  Dr. Powers' plan at that time was to continue to monitor Plaintiff's laboratory parameters, and to slowly build rapport with him so that he could help Plaintiff understand the absolute importance of completing the Harvoni treatment from the first day though the last due to Plaintiff's history of lack of cooperation with taking prescribed medication and concern that Plaintiff would not complete treatment even if he was a good candidate.  (UMF No. 60, Powers Decl. at ¶ 29.)  At that time, there was no evidence that Plaintiff's Hepatitis C infection would lead to liver cirrhosis or liver cancer.  (UMF No. 61, Powers Decl. at ¶ 29.)

23

Given all the above, Dr. Powers determined that Plaintiff was not a good candidate for Harvoni at that time. (UMF Nos. 47, 52-61, Powers Decl. at ¶¶ 22, 25-29; Ex. D to Holaday Decl. at 101-102, 123-127, 129-140, 169-70, 173, 177-179, 184-187, 191, 193-198, 244-260.) Defendant argues that Plaintiff cannot state a triable issue of material fact as Dr. Powers' treatment met the appropriate standard of care for a medical provider because a decision made by a professional is presumptively valid; liability may only be imposed when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment; and more than negligence is required to show denial of a medical care claim by a civilly committed psychiatric patient.

Plaintiff contends his constitutional rights were violated when Dr. Powers "personally interfered with the former referral for Harvoni by withdrawing it." (UMF No. 5, First Amended Complaint, ECF No. 10 at 4.) However, Defendant provides evidence that none of Plaintiff's prior primary care physicians made a determination or referral that Harvoni was an appropriate treatment for Plaintiff's Hepatitis C prior to Dr. Powers becoming one of Plaintiff's primary treating physicians. (UMF No. 31, Powers Decl. at ¶ 16.) Dr. Powers argues that he did not deny or withdraw any treatment to Plaintiff, who was diagnosed with Hepatitis C a decade later. (UMF Nos. 17, 31, Plaintiff's Deposition, pg. 13:21-14:2; Ex. C to Holaday Decl., Powers Decl. at ¶ 16.)

Dr. Powers' recommended course of treatment consisted of monitoring Plaintiff's Hepatitis C condition through routine lab tests, physical check ups and observation for any worsening signs of his conditions. (UMF No. 62, Powers Decl. at ¶ 30.) Dr. Powers' plan at that time was to continue to monitor Plaintiff's laboratory parameters and to slowly build rapport with him so that he could help Plaintiff understand the absolute importance of completing the Harvoni treatment from the first day through the last due to Plaintiff's history of lack of cooperation with taking prescribed medication and concern that he would not complete treatment even if he was a good candidate. (UMF No. 60, Powers Decl. at ¶ 29.) Dr. Powers even treated Plaintiff's Hepatitis B in order to avoid any further liver damage or complications due to interactions

between the newer Hepatitis C treatments – such as Harvoni – and reactivation of a dormant Hepatitis B infection.  (UMF Nos. 48-51, 63, Powers Decl. at ¶¶ 23, 24; Ex. D to Holaday Decl. at 122, 128, 141.)  Defendant claims that overall, the undisputed facts demonstrate attentiveness to Plaintiff's medical needs, not deliberate indifference.

Defendant also contends that the fact that Dr. Powers prescribed a different course of treatment than the Harvoni medication requested by Plaintiff does not amount to deliberate indifference, and there is no evidence that the treatment provided was medically unsound.  Dr. Powers performed an evaluation of Plaintiff's Hepatitis C condition pursuant to CDMH Special Order guidelines and given the lack of any signs or symptoms of liver impairment and low risk of progressing to cirrhosis, he determined that continued monitoring was medically appropriate. (UMF Nos. 47, 52-62, Powers Decl. at ¶¶ 22, 25-30; Ex. D to Holaday Decl. at 101-102, 123-127, 129-140, 169-170, 173, 177-179, 184-187, 191, 193-198, 244-260.)

Defendant concludes that he is entitled to summary judgment as Plaintiff cannot show that Defendant was deliberately indifferent.

**B.**   **Plaintiff Cannot Prove Cause of Injury**

Defendant contends that Plaintiff cannot prove the requisite level of causation or harm because Plaintiff did not suffer any permanent injury as he is completely cured of Hepatitis C and does not currently suffer from the condition.  (UMF No. 70, Plaintiff's Deposition, pg.  22:9-21; 41:4-11; Ex. C to Holaday Decl.; Powers Decl. at ¶ 38; Ex. D to Holaday Decl. at 199-234.) As of November 2018, the results of Plaintiff's laboratory testing show no evidence of infection due to Hepatitis C and normal liver function testing.  (UMF No. 73, Powers Decl. at ¶ 39; Ex. D to Holaday Decl. at 199-234.)   Platelet count, another marker of chronic liver injury, also remained in the normal range.  (Id.)

Defendant also contends that Plaintiff did not suffer any temporary injury due to a delay in receiving Harvoni.  No physician has informed Plaintiff that the delay in receiving Harvoni caused him any damage or medical complications.  (UMF Nos. 71-72, Plaintiff's Deposition, pg. 43:14-16; 43:23-44:3, 49:6-9; Ex. C to Holaday Decl.; Powers Decl. at ¶ 39.)   In addition, Plaintiff remained asymptomatic for clinical signs of hepatic dysfunction from January 2017

through October 2017.  (UMF No. 64; Powers Decl. at ¶ 32; Ex. D to Holaday Decl. at 142-160.)
There are no medical records that illustrate that Plaintiff suffered any damage in the interim from
the time he requested Harvoni from Dr. Powers until the time he received the treatment, and
Defendant argues that overall the undisputed facts show that no act or omission by Dr. Powers
caused or contributed to Plaintiff's alleged injuries.  (UMF Nos. 70-77, Plaintiff's Deposition at
22:9-21; 41:4-11, 43:14-16, 43:23-44:3, 49:6-9, Ex. C to Holaday Decl.; Powers Decl. at ¶ 38,
39, 42; Ex. D to Holaday Decl. at 199-234.)

   To the extent that Plaintiff argues that he did suffer an injury from a delay in receiving
Harvoni based on the way he felt, Defendant argues that Plaintiff's own opinion is insufficient
to withstand summary judgment, and Plaintiff must have expert testimony regarding whether Dr.
Powers' care actually caused an injury to him.   Defendant asserts that under <u>Hansen v. United
States</u>, 7 F.3d 137, 138 (9th Cir. 1993), bare allegations unsupported by any factual data do not
give rise to a genuine dispute of material fact.

   Defendant concludes that based on Dr. Powers' judgment as a medical professional,
Plaintiff now has the burden to produce a declaration from a competent expert to the contrary as
to causation, and in the absence of such a showing, Dr. Powers' declaration is controlling and
Defendant's Motion for Summary Judgment should be granted.

## VII. DEFENDANT'S BURDEN

   Based on Defendant's arguments and evidence in support of his motion for summary
judgment, the court finds that Defendant has met his burden of demonstrating that he did not act
with deliberate indifference to Plaintiff's serious medical needs, or fail to use his judgment as a
medical professional.   Therefore, the burden now shifts to Plaintiff to produce evidence of a
genuine material fact in dispute that would affect the final determination in this case.

## VIII. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS (SUF)

   Plaintiff submitted the following undisputed facts in support of his motion.  (ECF No. 41
at 19-26.)  The court finds that while most of Plaintiff's facts are disputed, there is no genuine
issue of material fact for trial.

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Response and Opposition of Defendant Bradley C. Powers, M.D. |
|---|---|
| Plaintiff Raymond D. Chester, Jr. (Plaintiff) contracted Hepatitis C Virus (HCV) in 1997.<br><br>**(Deposition of Raymond Chester, Exhibit C to Defendant Powers' Motion for Summary Judgment (Powers' MSJ), pp. 13-14** | 1.  Undisputed. |
| 2.  Plaintiff received no treatment for HCV. [5]<br><br>**(*Id.*, p. 14.)** | 2.  Objection. Vague and ambiguous as to time.<br><br>Undisputed that Plaintiff received no treatment for Hepatitis C ("HCV") in 1999 at Atascadero State Hospital because he did not seek any treatment.<br><br>**Plaintiff Raymond Chester's Deposition ("Chester Depo.") pg. 33:18-21.** |

---

[5] SUF No. 2.  Defendant objects to this fact as vague and ambiguous as to time, but does not dispute Plaintiff's testimony at his deposition that in 1999 he received no treatment for Hepatitis C ("HCV") at Atascadero State Hospital because he did not seek any treatment at that time.  Therefore, this fact, as it reflects Plaintiff's deposition testimony, is undisputed.

| | |
|---|---|
| 3. The medication to cure HCV, Harvoni®, was approved for prescription use in the U.S.A. on February 10, 2014. [6] <br><br> **(U.S. Food and Drug Administration Website.)** | 3.  Objection. Not authenticated. <br><br> Undisputed that Harvoni is a relatively new medication that was approved by the FDA in or around 2014 to treat Hepatitis C. <br><br> **Declaration of Bradley C. Powers, M.D. ("Powers Decl.") at ¶ 7.** |
| 4.  Plaintiff filed the operative complaint in this action on August 31, 2017 <br><br> **(Verified First Amended Complaint, ECF 10.)** | 4.  Undisputed. |

---

[6] SUF No. 3.  Defendant objects to this fact because it is not authenticated.  Plaintiff attributes this fact to the U.S. Food and Drug Administration Website without providing a proper cite for the website.  Defendant has restated the fact to reflect defendant Powers' statement in his declaration.  The restated fact is materially the same as Plaintiff's statement in SUF No. 3 and therefore is undisputed.

| | |
|---|---|
| 5. Plaintiff suffered extreme pain and suffering, physical and emotional.[7]<br><br>**(Deposition of Raymond Chester, Exhibit C to Powers' MSJ, P. 41.)** | 5. Objection. Conclusory. Vague and ambiguous as to time and scope. Assumes facts. Lacks foundation. This purported "fact" is improper as it relates to scientific issues beyond knowledge of average juror and expert causation testimony required. *See Sanderson v. Int'l Flavors & Fragrances*, 950 F. Supp. 981, 985 (C.D. Cal. 1996).<br><br>Disputed as from 2011- 2015, Plaintiff was episodically showing signs of liver inflammation, a common course for Hepatitis C infection, but did not show signs of significant irreversible injury to the liver. Plaintiff further remained asymptomatic for clinical signs of hepatic dysfunction from January 2017 through October 2017.<br><br>**Powers Decl. at ¶ 10, 32; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000007, POWERS000019, POWERS000042, POWERS000056-57, POWERS000071, POWERS000084, POWERS000091-98, POWERS000111-112, POWERS000142-160, POWERS000236-242** |

| | |
|---|---|
| 6. Defendant Powers told Plaintiff to "just meditate" in lieu of treatment for HCV.[8]<br><br>(***Id.*, p. 41.**) | 6. Objection. This purported "fact" directly contradicts the record.<br><br>Disputed as Dr. Powers' recommended course of treatment was to continue to monitor Plaintiff's Hepatitis C condition through routine lab tests, physical check ups and observe for any worsening signs of his conditions, to build a rapport with Plaintiff, and to treat Plaintiff's Hepatitis B infection.<br><br>**Powers Decl. at ¶ 23, 29-30; Exhibit D to Declaration of Anoush Holaday ("Holaday Decl."), Bates-Stamped pg. POWERS000122** |

---

[7] SUF No. 5.  Defendant objects to this fact as conclusory, vague and ambiguous as to time and scope, lacking foundation, assuming facts, and constituting an improper lay opinion.  Lay opinion may be offered by laymen under Rule 701 of the Federal Rules of Evidence so long as the opinion is based on the witness's own perception, is helpful to understanding the witness's testimony or to determining a fact in issue, and is not based on the kinds of specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701.  Plaintiff's statement that he experienced pain is rationally based on his perceptions, id. R. 701(a), and gives no opinion about the cause of his pain.  However, because Plaintiff does not indicate when, or under what circumstances, he experienced pain, this fact, without more, is disputed as ambiguous as to time and scope.  Furthermore, Plaintiff cites his deposition testimony on page 41 as evidence supporting this fact, but on page 41 Plaintiff does not testify that he suffered any physical pain.  Therefore, the court finds that SUF No. 5 is disputed.

[8] SUF No. 6.  This fact contradicts Plaintiff's medical records and Dr. Powers' declaration, which both indicate that Dr. Powers had a plan to work with Plaintiff so Plaintiff would understand the testing and treatment he needed and that a Hepatitis B vaccination was medically necessary prior to treatment of his Hepatitis C.  Plaintiff's allegation that Defendant told him to "just meditate" instead of treatment is not supported by the record and fails to create a genuine issue of material fact for trial.  See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable juror could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").  Therefore, the court finds that this fact is disputed.

| | |
|---|---|
| 7.  All Defendants herein knew of Plaintiff's HCV infection in 2011. [9]<br><br>(*Id.*, **Exhibit D, Wellness & Recovery Plan, pp 1-1 of 32.**) | 7.  Objection. Vague and ambiguous. Conclusory.  This purported "fact" directly contradicts the record.<br><br>Disputed as Dr. Powers did not began treating Plaintiff until November 10, 2015.<br><br>**Powers Decl. at ¶ 17.** |
| 8.  Plaintiff received no treatment for HCV infection at that time.[10]<br><br>(*Id.*, **Exhibit D.**) | 8.  Objection. Conclusory.  Vague and ambiguous as to time.  Assumes Facts.<br><br>Undisputed as none of Plaintiff's prior primary care physicians made a determination or referral that Harvoni was an appropriate course of treatment for Plaintiff's Hepatitis C as of the end of 2015.<br><br>**Powers Decl. at ¶ 16.** |

[9] SUF No. 7.  This fact contradicts the record, which shows that Dr. Powers did not begin treating Plaintiff until November 10, 2015.  Powers Decl. § 16 ("I became the primary treating physician for Plaintiff on November 10, 2015.")  Therefore, it fails to create a genuine issue of material fact for trial.  See Scott, 550 U.S. 372. The court finds that this fact is disputed.

[10] SUF 8.  Defendant objects to this fact as conclusory, vague and ambiguous as to time and scope, lacking foundation, assuming facts, and contradicting the record.  However, Defendant also find this fact to be undisputed "as of 2015."  The court finds it undisputed that **Plaintiff received no treatment for his HCV infection as of 2015.**

| | |
|---|---|
| 9.  Plaintiff experienced progressively worse HCV pain and symptoms.[11] **(*Id.*, Exhibit C, Wellness & Recovery Plan, 12/01/2014, p. 4 of 14.)** | 9.  Objection.  Conclusory.  Vague and ambiguous as to time and scope.  Assumes facts.  This purported "fact" directly contradicts the record. Disputed. Although not correctly identified, the record is Exhibit D to Holaday Decl. Bates-Stamped pg. POWERS000084, which shows that Plaintiff was asymptomatic at the time. From 2011- 2015, Plaintiff was episodically showing signs of liver inflammation, a common course for Hepatitis C infection, but did not show signs of significant irreversible injury to the liver. Plaintiff had liver enzyme elevations potentially related to ingestion of valproic acid, a drug that was prescribed by the psychiatry team to help with mood stabilization secondary to the patient's traumatic brain injury. **Powers Decl. at ¶ 10; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000007, POWERS000019, POWERS000042, POWERS000056-57, POWERS000071, POWERS000084, POWERS000091-98, POWERS000111-** |

| | |
|---|---|
| | **112, POWERS000187, POWERS000236-242** |
| 10.  Plaintiff still given no treatment for HCV infection. [12]<br><br>(***Id.*, Wellness & Recovery Plan, 12/08/2015, p. 4 of 13.)** | 10.  Objection.  Conclusory.  Vague and ambiguous as to time and scope.  Assumes facts.<br><br>Undisputed to the extent that Plaintiff did not request treatment from Dr. Powers until July 2016 and none of Plaintiff's prior primary care physicians made a determination or referral that Harvoni was an appropriate course of treatment for Plaintiff's Hepatitis C as of the end of 2015.<br><br>**Powers Decl. at ¶ 16, 17, 21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000122**<br><br>Although not correctly identified, the record |

---

[11] SUF No. 9.  Defendant objects to this fact as conclusory, vague and ambiguous as to time and scope, assuming facts, and contradicting the record.  The medical record to which Plaintiff apparently refers, page 4 of 14 of his DHS Treatment Plan, reflects that on 12/01/2014, Plaintiff's "Hep C (HMC) [is] Asymptomatic." (ECF No. 56-1 at 91.)  SUF 9 contradicts the medical record and is therefore disputed.  Moreover, because he is a layman, Plaintiff cannot testify that any pain or distress he suffered was caused by Dr. Powers' course of treatment. (Fed. R. Evid. 701.)

[12] SUF No. 10.  Defendant objects to this fact as conclusory, vague and ambiguous as to time and scope, and assuming facts.  However, Defendant also find this fact to be Undisputed to the extent that "Plaintiff did not request treatment from Dr. Powers until July 2016 and none of Plaintiff's prior primary care physicians made a determination or referral that Harvoni was an appropriate course of treatment for Plaintiff's Hepatitis C as of the end of 2015," which reflects the record, Dr. Powers' declaration and Plaintiff's medical record at ECF No. 156 at 129. The court finds this fact to be disputed as to time and scope.

| | |
|---|---|
| | is Exhibit D to Holaday Decl. Bates-Stamped pg. POWERS000098, which shows that Plaintiff was asymptomatic at the time. |
| 11.  Plaintiff once again requested Harvoni® treatment for his HCV infection on 6/14/2016.[13]<br><br>(*Id.*, **Medical Interdisciplinary Notes (IDN), 6/14/2016**) | 11.  Objection.  Conclusory.  Vague and ambiguous as to time and scope.  Assumes facts. This purported "fact" directly contradicts the record.<br><br>Disputed to the extent that Plaintiff did not request treatment from <u>Dr. Powers</u> until July 28, 2016. On June 14, 2016, Plaintiff reported to his Treatment Team, typically the psychologist, psychiatrist, social worker and behavioral therapist, that he was interested in beginning Hepatitis C treatment. He was informed that his treating RN would follow up with his request.<br><br>**Powers Decl. at ¶ 19-21; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000108, POWERS000122** |

---

[13] SUF 11.  Defendant disputes this fact, as it directly contradicts the record at ECF No. 56-1 at 115 which indicates that on 06/14/16 Plaintiff reported to his treatment team (which did not include Dr. Powers) that he was interested in beginning Hep C treatment but does not indicate that Plaintiff requested Harvoni treatment.  The court finds this fact to be disputed.

| | |
|---|---|
| 12.  Defendant Powers ordered Hepatitis <u>B</u> treatment for Plaintiff.<br><br>(***Id.*, Physician's Progress Note, 8/23/16**) | 12.  Undisputed. |
| 13.  Plaintiff's HCV RNSA count extremely high.[14]<br><br>(***Id.*, Test Report, HCV RNA, 7/29/2016.**) | 13.  Objection. Conclusory. Lacks foundation. Speculative. This purported "fact" directly contradicts the record. This purported "fact" is improper as it relates to scientific issues beyond knowledge of average juror and expert causation testimony required. *See Sanderson v. Int'l Flavors & Fragrances*, 950 F. Supp. 981, 985 (C.D. Cal. 1996).<br><br>Disputed to the extent that Plaintiff's blood tests showed normal CBC, normal liver function testing, except mild elevation of total bilirubin, and low viral load of hepatitis C infection.  Thyroid testing was also within normal limits at that time.<br><br>**Powers Decl. at ¶ 22; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000123-127** |

---

[14] SUF No. 13.  Defendant disputes this fact because it directly contradicts the record, and because Plaintiff, as a layman, may not properly interpret the medical record to which he refers.  The court finds this fact to be disputed.

Case 1:16-cv-01257-DAD-GSA   Document 58   Filed 07/23/20   Page 36 of 43

| | |
|---|---|
| 14.  Defendant Powers still not acknowledging need for HCV medication.[15]<br><br>(*Id.,* **DMH RN Progress Note, 2/13/2017, p. 3 of 6.)** | 14.  Objection. Conclusory. Lacks foundation. Speculative. This purported "fact" directly contradicts the record.<br><br>Although not correctly identified, the record is Exhibit D to Holaday Decl. Bates-Stamped pg. POWERS000150, which shows that Plaintiff was asymptomatic and stable at the time.<br><br>Disputed as Dr. Powers' recommended course of treatment was to continue to monitor Plaintiff's Hepatitis C condition through routine lab tests, physical check ups and observe for any worsening signs of his conditions.  Plaintiff remained asymptomatic for clinical signs of hepatic dysfunction from January 2017 through October 2017.<br><br>**Powers Decl. at ¶ 30, 32; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000142-160** |

---

[15] SUF No. 14.  Defendant states that Plaintiff has not correctly identified the record, which is found at ECF No. 56-1 (Exhibit D) at POWERS000150.  The court finds this fact to be ambiguous as to whether there was a need for HCV medication which Defendant failed to acknowledge, or whether Defendant acknowledged that there was no need for medication.  Therefore, the court finds this fact to be disputed.

| | |
|---|---|
| 15.  Defendant Powers ordered <u>Pre-</u>HCV treatment on 7/13/2017.[16]<br><br>(*Id.*, **Physician's Orders, 7/23/2017.**) | 15.  Undisputed to the extent that on July 13, 2017, Dr. Powers ordered further blood tests to assess Plaintiff's Hepatitis B and C conditions; however, Plaintiff did not show up for his tests.<br><br>**Powers Decl. at ¶ 33; Ex. D to Holaday Decl., Bates-Stamped pg. POWERS000162-163** |
| 16.  Defendant Powers <u>finally</u> prescribes Harvoni® to Plaintiff on 12/13/2017. [17]<br><br>(*Id.*, **Physician's Notes, 12/13/2017.**) | 16.  Objection. This purported "fact" directly contradicts the record.<br><br>Disputed as on or around September 2017, Dr. Powers was moved to a different unit and no longer was Plaintiff's primary care physician.<br><br>**Powers Decl. at ¶ 34** |
| 17.  Plaintiff's HCV levels undetectable 2/06/2018.<br><br>(*Id.*, **PIL [Lab] Test Reports, 2/07/2018, 2/20/2018, 7/11/2018, and 11/29/2018**. | 17.  Undisputed. |

---

[16] SUF No. 15.  This fact is undisputed to the extent it indicates that on 7/13/17 Dr. Powers ordered blood tests to assess Plaintiff's Hepatitis B and C conditions.

[17] SUF No. 16.  This fact contradicts the record because Dr. Powers was no longer caring for Plaintiff on 12/13/17.  Dr. Powers moved to a different unit on or about September 2017.  The court find this fact to be disputed.

## IX.   ANALYSIS -- MEDICAL CLAIM AGAINST DR. BRADLEY C. POWERS

Plaintiff, a civil detainee at Coalinga State Hospital, brings a medical claim against defendant Dr. Bradley C. Powers for denial of due process under the Fourteenth Amendment. For such a claim, as discussed above in this order, the Constitution requires only that courts ensure that professional judgment was exercised.  Youngberg, 457 U.S. at 315.  A "decision, if made by a professional, is presumptively valid [and] liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Id. at 322-23.

Also discussed above is that courts have used the Eighth Amendment deliberate indifference standard in such cases *to establish a floor for claims by civil detainees*. Irvin, 2011 WL 838915, at *8 (emphasis added.)  That is, a civil detainee who can show a violation under an Eighth Amendment standard can also satisfy a Fourteenth Amendment standard.  Id. "[T]he Eighth Amendment still provides a floor for the level of protection that SVPs must receive . . . and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied."  Hubbs, 538 F.Supp.2d at 1266.  Accordingly, the court begins this analysis with the deliberate indifference standard used for a medical claim under the Eighth Amendment.

### A.   Objective Element – Existence of Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d at 1059.  Here, there is no dispute that Plaintiff presented with a serious medical need. Plaintiff alleges in the First Amended Complaint that he had Hepatitis C, a fatal disease of the liver that will kill him if not treated.  (ECF No. 10 at 3.)  It is undisputed that Plaintiff contracted Hepatitis C approximately in 1997 and found out he had the disease in 1999 at Atascadero State Hospital.  (Pltf's Depo., ECF No. 36-6 at 4:22-5:4.)  The parties do not dispute that failure to treat Plaintiff's disease could result in the unnecessary and wanton infliction of pain.  Therefore, the first prong is satisfied in Plaintiff's favor.

**B.**   <u>**Subjective Element – Deliberate Indifference**</u>

There is also no dispute that Dr. Powers knew about Plaintiff's serious medical need and knew that Plaintiff faced a substantial risk of serious harm to his health without treatment for Hepatitis C.

Plaintiff claims that Dr. Powers was deliberately indifferent to his serious medical needs because Defendant failed to provide the medication Harvoni for treatment of Plaintiff's Hepatitis C, as requested by Plaintiff, for more than a year.  Plaintiff also claims that defendant Dr. Powers interfered with a former referral by a different doctor for Harvoni by withdrawing it.

Plaintiff alleges in the First Amended Complaint that at least three times since July 31, 2015, he requested Hepatitis C treatment, but a year later, no treatment had commenced.  (First Amended Complaint, ECF No. 10 at 4.)  He alleges that he was repeatedly told that approval was needed to treat his Hepatitis C.  (<u>Id.</u>)  Plaintiff alleges that as of December 29, 2015, a referral for an infectious disease consultant was made by Plaintiff's former primary care physician to address treatment of Plaintiff's Hepatitis C, but nothing else had happened to provide Plaintiff with treatment.  (<u>Id.</u>)  Plaintiff also alleges that defendant Dr. Powers refused to pursue the critical medical treatment with Harvoni that Plaintiff needed to stay alive and regain his health.  (<u>Id.</u>)  Plaintiff states that he learned that at least four Hepatitis C patients at the State Hospital had requested Harvoni, and all four patients were denied Harvoni on the ground they were not sick enough.  (<u>Id.</u>)  In all four cases, Plaintiff believes that the four patients denied treatment with Harvoni died of cirrhosis of the liver.  (<u>Id.</u>)  Plaintiff alleges that Harvoni is ineffective if defendants wait too long to initiate treatment.  (<u>Id.</u>)  Plaintiff provides evidence that he sent three complaints to the California Office of Patients' Rights, complaining that his right to medical care was being violated because his Hepatitis C was not being investigated.  (Exhibits to First Amended Complaint, ECF No. 10 at 11-15.)

Even if all of these allegations are taken as true, Plaintiff has not shown that he was inappropriately treated for his Hepatitis C by Dr. Powers in violation of the Fourteenth Amendment.  Plaintiff provides no evidence that Dr. Powers possessed the requisite state of mind to demonstrate deliberate indifference,  a "sufficiently culpable state of mind" in denying proper

medical care, <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002), citing <u>Wallace v. Baldwin</u>, 70 F.3d 1074, 1076 (9th Cir. 1995), or that Dr. Powers failed to use professional judgment.

Plaintiff provides no evidence that Dr. Powers denied Plaintiff treatment for his Hepatitis C. "Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoner." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987); <u>Estelle</u>, 429 U.S. at 106. The evidence shows that Dr. Powers decided not to prescribe Harvoni to Plaintiff until after he had followed a treatment plan recommended by the Department of Health, including testing and monitoring of Plaintiff's condition to determine the best time to prescribe Harvoni. (Powers Declaration, ECF No. 36-8 ¶ 8.)   Dr. Powers delayed prescribing Harvoni for Plaintiff while he treated Plaintiff's Hepatitis B and helped Plaintiff understand what it would be like to take an effective course of Harvoni. (<u>Id.</u> ¶¶ 23, 27-29.)  Plaintiff's disagreement with Dr. Powers' treatment plan, without more, does not state a medical claim. <u>Jackson</u>, 90 F.3d at 331 ("To prevail under these principles, [the plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances.")

Plaintiff provides no evidence that Plaintiff's previous doctor, Dr. Hatwalker, made a referral for Plaintiff to be treated with Harvoni, and that Dr. Powers refused to follow this plan. The medical record instead shows that Dr. Hatwalker considered the Harvoni treatment for Plaintiff's Hepatitis C, but believed Plaintiff's Hepatitis B condition could reactivate because of the Harvoni treatment protocol. (Powers Declaration, ECF No. 36-8 ¶ 14.)  The medical record shows that on October 30, 2015, Dr. Hatwalker wrote an order for Plaintiff to be referred to an infectious disese specialist for further evaluation and the possible treatment of his Hepatitis C in the face of concomitant Hepatitis B. infection. (<u>Id.</u> ¶ 15.)  Even if Dr. Powers refused to follow any of Dr. Hatwalker's treatment plan, this refusal, without more, would not state a medical claim.  Evidence that medical caregivers disagreed as to the need to pursue one course of treatment over another is insufficient, by itself, to establish deliberate indifference. <u>Jackson</u>, 90 F.3d at 332.

Plaintiff provides no evidence that Dr. Powers placed Plaintiff's health at risk because he refused to prescribe Harvoni for Plaintiff, the only cure for Hepatitis C, or that Dr. Powers' course of treatment did not follow accepted professional judgment.  Evidence shows that Dr. Powers complied with the California Department of Mental Health's official guidelines for treating Hepatitis C Patients in a Department of Mental Health facility.  (Powers Declaration, ECF No. 36-8 ¶ 8.)   Following the guidelines, Defendant assessed Plaintiff for the likelihood of compliance with the requirements of a course of treatment with Harvoni considering Plaintiff's personality traits that reduced the likelihood of treatment compliance.  (Id.)  The medical record shows that Plaintiff was without significant liver injury related to his Hepatitis C infection, and that Plaintiff's course of treatment consisted of monitoring Plaintiff periodically through lab tests and physical check ups and observing for any worsening signs of Hepatitis C.  (Id. ¶ 11.)  Dr. Powers also treated plaintiff's Hepatitis B infection to avoid complications due to interactions between the newer Hepatitis C treatments – such as Harvoni – and reactivation of a Hepatitis B infection.  (Id. ¶¶ 23, 24.)  Plaintiff has not shown more than a disagreement with Dr. Powers' treatment plan, which does not state a medical claim.  Jackson, 90 F.3d at 331.

Plaintiff provides no admissible evidence that Dr. Powers' treatment plan caused him any injury, or that any delay in Plaintiff's treatment with Harvoni resulted in further injury.  In his deposition, Plaintiff testified that during the time he was waiting to take Harvoni, his symptoms worsened.

Q.    From when you initially requested Harvoni to the time when you actually received it, did your symptoms get worse in between that time?

A.    Oh, yeah.

Q.    And how so?

A.    I just kept getting sicker and sicker.  I threw up.  I was confined to my bed.

(Plaintiff's Deposition, ECF No. 36-6, page 41: 12-18.)

Plaintiff also testified that no doctor has said that the delay in treatment caused him injury.

Q.    Has any doctor told you that the delay in treatment has caused you any sort of damage?

A.      No.

(Id., page 43:13-16.)

Q.      And has any doctor told you that the delay in receiving Harvoni caused you any sort of medical injury?

A.      Nobody's told me that, no.

(Id., page 49:6-9.)   Even if Plaintiff believed that he was injured because of Dr. Powers' treatment, as a layman Plaintiff cannot testify to his own medical opinion, interpret the meaning of medical notes, or testify that any pain or distress he claims he suffered was directly caused by Dr. Powers' course of treatment.  Fed. R. Evid. 701.

## X.      CONCLUSION AND RECOMMENDATIONS

In sum, the court finds no genuine dispute as to any material fact at issue in this case. Moreover, based on the foregoing, the court finds that defendant Dr. Powers has proven an absence of a triable issue of material fact that would support Plaintiff's medical claim, therefore Defendant Powers is entitled to summary judgment as a matter of law.

Therefore, **IT IS HEREBY RECOMMENDED that:**

1.      Defendant Dr. Powers' motion for summary judgment, filed on August 19, 2019, be **GRANTED;**

2.      Plaintiff's cross-motion for summary judgment, filed on September 9, 2019, be **DENIED;**

3.      Summary judgment be entered in favor of Defendant Dr. Powers;

4.      This case proceed with the First Amended Complaint against defendants Audrey King, Jagsir Sandhu, and Robert Withrow, on Plaintiff's medical claim under the Fourteenth Amendment; and

5.      This case be referred back to the Magistrate Judge for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed **within ten (10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 23, 2020**                    **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE